In The

Court of Appeals

For The

First District of Texas

____________


NO. 01-07-00441-CR

____________


MICHAEL EDWARD JIRON, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the 209th District Court 

Harris County, Texas

Trial Court Cause No. 983020 





MEMORANDUM OPINION


 A jury convicted appellant, Michael Edward Jiron, of aggravated sexual
assault of a child, and the trial court assessed punishment at 35 years in prison. 
See Tex. Penal Code Ann. § 22.021(a)(1)(B) (Vernon Supp. 2007). In a single
point of error, appellant contends that the evidence is factually insufficient to
establish that he intentionally or knowingly caused the sexual organ of a child
under the age of 14, complainant, M.L., to contact appellant's sexual organ. See
id. § 22.021(a)(1)(B)(iii). We affirm.

Facts


 M.L.'s parents were high school classmates who married in December 1993. 
The couple moved to Texas, bought a three-bedroom home in Katy, and had a
daughter, M.L., who was born on December 18, 1997. In August 1999, M.L.'s
mother met and befriended appellant and his wife through an online chatroom. 
The trio conversed on a regular basis, both online and by telephone for several
months and met in person over the following Thanksgiving weekend. During that
weekend, the trio's relationship turned sexual, and appellant and his wife spent
several nights with M.L.'s parents at their house in Katy. 

 M.L.'s mother maintained contact with appellant and his wife and took M.L.
to live with them at their house in Utah for several months; she returned to the
Katy house with M.L. after M.L.'s father filed for divorce. In August 2000,
appellant and his wife relocated to Houston with their four sons and began living
with M.L. and her mother at the house in Katy. The three adults shared the master
bedroom, and appellant's sons shared a bedroom. M.L. had the third bedroom and
may have shared it occasionally with the youngest of appellant's sons, who, like
M.L., was not yet of school age. 

 M.L.'s mother shared the house with appellant and his family until October
2001, when M.L.'s mother moved out and rented a separate apartment for herself
and M.L. Appellant, his wife and sons remained at the house in Katy. Despite the
move to a separate apartment, M.L.'s mother maintained a close relationship with
appellant, his wife and sons, and she and M.L. often joined them in social
activities. Though M.L. normally attended daycare, her mother left her with
appellant and his family when M.L. did not attend daycare. 

 Over Halloween weekend 2003, while at the home of her father, M.L. made
her first outcry of sexual abuse to her stepmother. (1) Using pictures and hand
gestures, M.L. told her stepmother that appellant's son, J., had put his penis
between her legs on her vagina. The results of an examination at Texas Children's
Hospital after this outcry showed a normal physical exam with no signs of trauma,
and M.L.'s father and stepmother also testified that they observed no injuries to
M.L. The examining physician and the child-abuse investigator, Detective L.
McFarland, who investigated the case after referral by the Children's Assessment
Center, explained that lack of physical manifestation was not unusual. M.L. was
also interviewed at the Children's Assessment Center, where she told the
interviewer about J. and a person named "Mike," though she did not use the name
"Michael Jiron" or refer specifically to appellant. (2)

 Later in 2003, while at the food court of a shopping mall, M.L. made a
second outcry to her stepmother; while playing with her french fries and smashing
them together, M.L. stated, "[T]his is what the stuff looks like that comes out . . .
[when] Mike has his penis in my mouth." The stepmother confirmed that M.L.
referred to appellant as both "Mike" and "Michael," and that M.L. had definitely
referred to appellant as the person who assaulted her. M.L. was interviewed again
after making this statement, but did not undergo another medical exam. 

 On taking the witness stand at trial, M.L. responded properly to questions by
the prosecutor aimed at discerning her understanding of the concept of truth. M.L.
identified appellant in court and testified that he had "sexually abused" her. She
explained this act in the following terms: "[Appellant] put me on his bed and took
off my pants and underwear"; he "put his penis between my legs" and "started . . .
jumping up and down"; appellant's penis was touching her "on [her] skin,"
"between [her] legs," on the part of her body that she uses to go to the restroom;
and that "sometimes white stuff would come out." 

 M.L. testified that she did not know at which house the incidents occurred,
or what she or appellant was wearing at the time of the incidents, but did testify
that the acts took place in the same house. She was also certain about the room in
which the acts occurred--appellant's bedroom--and the time of day in which one
of the acts took place--early evening, when it was beginning to get dark--and said
that she was four or five years old when the incidents occurred. Appellant testified
that he had never inappropriately touched M.L. 

Factual Sufficiency of the Evidence


 In his sole point of error, appellant contends that the evidence was factually
insufficient to prove that he intentionally or knowingly caused the sexual organ of
M.L. to contact his sexual organ. 

A. Standard of Review

 When conducting a factual-sufficiency review, we view all of the evidence
in a neutral light. See Cain v. State, 958 S.W.2d 404, 408 (Tex. Crim. App. 1997). 
We will set the verdict aside only if (1) the evidence is so weak that the verdict is
clearly wrong and manifestly unjust or (2) the verdict is against the great weight
and preponderance of the evidence. Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim.
App. 2000). Under the first prong of Johnson, we cannot conclude that a
conviction is "clearly wrong" or "manifestly unjust" simply because, on the
quantum of evidence admitted, we would have voted to acquit had we been on the
jury. Watson v. State, 204 S.W.3d 404, 417 (Tex. Crim. App. 2006). Under the
second prong of Johnson, we cannot declare that a conflict in the evidence justifies
a new trial simply because we disagree with the jury's resolution of that conflict. 
Id. Before finding that evidence is factually insufficient to support a verdict under
the second prong of Johnson, we must be able to say, with some objective basis in
the record, that the great weight and preponderance of the evidence contradicts the
jury's verdict. Id. 

 In conducting a factual-sufficiency review, we must address the evidence
that appellant claims most undermines the jury's verdict. See Sims v. State, 99
S.W.3d 600, 603 (Tex. Crim. App. 2003). The fact-finder alone determines what
weight to place on contradictory testimonial evidence because that determination
depends on the fact-finder's evaluation of credibility and demeanor. Cain, 958
S.W.2d at 408-09. As the determiner of the credibility of the witnesses, the fact-finder may choose to believe all, some, or none of the testimony presented. 
Chambers v. State, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991). Appellant
challenges only the factual sufficiency of the evidence and has thus effectively
conceded that the evidence is legally sufficient to sustain his conviction. Patterson
v. State, 96 S.W.3d 427, 432 n.8 (Tex. App.--Austin 2002), aff'd, 152 S.W.3d 88
(Tex. Crim. App. 2004).(citing Clewis v. State, 922 S.W.2d 126, 129 (Tex. Crim.
App. 1996)).

B. Discussion

 Appellant contends that factually insufficient evidence supports the jury's
finding him guilty of the aggravated sexual assault of M.L., because there was no
medical evidence of any sexual abuse or activity, no marks or complaints of
bruising, bleeding or vaginal discharge, because appellant has consistently denied
any acts of sexual assault against M.L, and because M.L.'s hymen was still intact. 
Appellant also argues that M.L.'s testimony alone is not sufficient because she was
unclear about the dates of the alleged incidents, did not know who assaulted her on
particular occasions, and never testified that she was assaulted by a 200-pound man
with whom she had lived for over a year. Appellant also suggests that M.L. may
have confused appellant with his son, J., who admitted that he sexually assaulted
M.L.

 The indictment alleged that appellant committed the offense of aggravated
sexual assault of a child, in violation of section 22.021(a)(1)(B) of the Penal Code. 
See Tex. Penal Code Ann. § 22.021(a)(1)(B)(iii) (Vernon Supp. 2007). For the
jury to find the appellant guilty, the State had to prove that appellant intentionally
or knowingly caused the sexual organ of M.L. to contact appellant's sexual organ,
see id., and that M.L. was a person younger than 17 who was not the appellant's
spouse. Id. § 22.011(c)(1). A conviction for aggravated sexual assault of a child is
supportable on the uncorroborated testimony of the victim if, at the time of the
alleged offense, the victim was a person 17 years of age or younger. See Tex.
Code Crim. Proc. Ann. art. 38.07(a)-(b)(1) (Vernon 2005); Tex. Penal Code
Ann. § 22.021(a)(1)(B); Garcia v. State, 563 S.W.2d 925, 928 (Tex. Crim. App.
1978); Perez v. State, 113 S.W.3d 819, 838 (Tex. App.--Austin 2003, pet. ref'd).

 Viewed in the mandatory neutral light, the record shows that M.L., who was
nine years old at trial, identified appellant in court as her assailant and testified that
she was four or five and unmarried when appellant undressed her and put his penis
between her legs where it touched her vaginal area. This testimony alone is legally
sufficient to establish that appellant intentionally or knowingly caused M.L.'s
sexual organ to contact his own sexual organ under well-settled law. See Tex.
Code Crim. Proc. Ann. art. 38.07(a)-(b)(1); Tex. Penal Code Ann.
§ 22.021(a)(1)(B); Garcia, 563 S.W.2d at 928; Perez, 113 S.W.3d at 838.

 Appellant's contention that M.L.'s testimony was confused or otherwise not
credible does not defeat that settled law, but is directed instead to the weight of the
evidence--and was, therefore, a question for the jury to decide. See Cain, 958
S.W.2d at 408-09; Perez, 113 S.W.3d at 838. Accordingly, the jury was authorized
to disregard any inconsistencies in M.L.'s testimony in deciding to accord
probative weight to the remainder of her testimony in finding appellant guilty. See
Perez, 113 S.W.3d at 839. 

 Because the jury may choose to believe all, some, or none of the testimony
presented, the evidence was not so weak as to render the verdict clearly wrong and
manifestly unjust, and is not so against the great weight and preponderance of the
evidence as to render the jury's verdict clearly wrong or manifestly unjust simply
because the jury chose to believe M.L.'s testimony over appellant's testimony. See
Johnson, 23 S.W.3d at 11; Givens v. State, 26 S.W.3d 739, 742 (Tex.
App.--Austin 2000, pet. ref'd).

 Though appellant complains about the lack of physical evidence suggesting
that M.L. was the victim of sexual abuse, both the physician who examined M.L.
some time in November 2003 and Detective McFarland testified that lack of
physical signs of trauma was not unusual and could be normal. As the physician
explained, perpetrators frequently do not use enough force with young victims to
cause injury, and injury would not be expected if the assault consisted of rubbing
on the outside of the female sexual organ. In exercising its role as the trier of fact,
the jury could have chosen to believe or reject the testimony of these State
witnesses. See Chambers, 805 S.W.2d at 461. We may not substitute our
judgment for the jury's decision to accept that testimony. See Givens, 26 S.W.3d
at 742. 

 For the same reason, we cannot accept appellant's suggestion that M.L. was
mistaken about his having sexually assaulted her, given that his son, J., admitted
having sexually assaulted her. We note, in this regard, that the record reflects that
M.L.'s father and stepmother confirmed that M.L. knew and referred to appellant
as either "Mike" or "Michael," and that there was no equivocation concerning
appellant as the perpetrator once she made her outcry about appellant. In addition,
the record shows that M.L. understood that questioning about "Mr. Jiron" referred
to appellant. 

 Having reviewed all the evidence in a neutral light, including the testimony
of M.L., which alone is legally sufficient, we cannot say that appellant's view of
the evidence so greatly preponderates against the jury's finding him guilty of the
aggravated sexual assault of M.L. that the verdict is manifestly unjust. See
Johnson, 23 S.W.3d at 11; Watson, 204 S.W.3d at 417.

Conclusion


 We affirm the judgment of the trial court.




 Sherry Radack


 Chief Justice


Panel consists of Chief Justice Radack and Justices Jennings and Bland.


Do not publish. Tex. R. App. P. 47.2(b)

1. At the time, the stepmother was engaged to M.L.'s father. The father became M.L.'s
primary conservator shortly after investigation into her assault began. He divorced
M.L's mother in May 2001 and remarried in December 2003. 
2. Testifying on appellant's behalf, his son, J., admitted that he pleaded guilty as a
juvenile to sexually assaulting M.L. J. was 19 years old when he testified and 13 or
14 when he assaulted M.L.